UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
THE ROBERT PLAN CORPORATION          MEMORANDUM AND ORDER
and THE ROBERT PLAN OF NEW           09-CV-1930 (JS)
YORK CORPORATION,                    Bankr. Case No. 09-08027

                 Appellees,

       - against -

LIBERTY MUTUAL INSURANCE
COMPANY and LIBERTY MUTUAL
FIRE INSURANCE COMPANY,

                 Appellants.
------------------------------------X
APPEARANCES:
For Appellants:      Marshall T. Potashner, Esq.
                     Dennis J. Loiacono, Esq.
                     Jaffee & Asher LLP
                     600 Third Avenue
                     New York, NY 10016

For Appellees:       Michael S. Amato, Esq.
                     Ruskin Moscou Faltischek, P.C.
                     1425 Reckson Plaza
                     Uniondale, NY 11556

SEYBERT, District Judge:

                            INTRODUCTION

       Appellants are creditors Liberty Mutual Insurance Company

and Liberty Mutual Fire Insurance Company (collectively, "Appellants"

or "Liberty Mutual").    Appellees are debtors The Robert Plan

Corporation   and   The   Robert   Plan   of   New   York   Corporation

(collectively, "Appellees" or "Debtors").

       On March 19, 2009, United States Bankruptcy Judge Robert E.

Grossman   granted   Appellees'   motion   for   a   preliminary   injunction

enjoining Appellants' contempt action against third party non-debtors Philbert Nezamoodeen and Jasper J. Jackson (collectively, "Officers"). Appellants now appeal that decision. For the foregoing reasons, the Appeal is DENIED and the Bankruptcy Court's Order is AFFIRMED.

## BACKGROUND

The Robert Plan Corporation ("Robert Plan") is a Delaware corporation with its principal place of business in New York. See Appellee's Compl. ¶ 5. Robert Plan's wholly owned subsidiary, the Robert Plan of New York Corporation ("Robert Plan of New York") is a New York corporation. Id. at ¶ 6. Nezamoodeen and Jackson are Robert Plan officers. Id. at ¶ 15. Appellants are both Massachusetts corporations, operating as stock insurance companies. Id. at ¶¶ 7, 8.

In August 2007, Liberty Mutual obtained a $236,989.36 judgment in the New York Supreme Court, Queens County, against Robert Plan. A balance of $173,313 is still owed. Seeking to enforce its judgment, Liberty Mutual served restraining notices on the Debtors, prohibiting Debtors from transferring their property. In addition, in April 2008, Liberty Mutual subpoenaed Robert Plan for a deposition and certain documents. Robert Plan failed to produce documents or appear for the deposition. Robert Plan contends that these failures

were not willful, but resulted from the company being in distress and thus unable to comply with Liberty Mutual's demands.

Despite the restraining notices, Robert Plan paid out $322,597.51 of its assets. Most of this sum went to payroll and related expenses, such as payroll taxes and unemployment insurance. But a small portion went to third parties, including a settlement of a wrongful discharge claim.

On August 25, 2008, the Debtors filed Chapter 11 petitions in the United States Bankruptcy Court for the Eastern District of New York. Due to this filing, on September 2, 2008, the New York Supreme Court stayed proceedings, including the contempt proceedings that Liberty Mutual commenced against the Debtors. Liberty Mutual then commenced a contempt action in New York Supreme Court, Kings County against the Officers for violating the restraining notices by paying out Robert Plan's assets rather than satisfying the outstanding judgment. In this action, Liberty Mutual sought $173,313 in sanctions against the Officers. On January 22, 2009, the Debtors filed a motion in the Bankruptcy Court seeking to stay the contempt action against the Officers.

Judge Grossman conducted two days of hearings to decide if he should stay the Kings County action against the Officers. After the first hearing, Judge Grossman requested further briefing on three specific issues: (1) did the Officers have a right to seek

indemnification from the Debtors?; (2) if the Officers were found in contempt, would that negate their right to indemnification?; and (3) is indemnification an administrative claim against the estate or a general unsecured claim?  See Jan. 29, 2009 Hearing Tr. at 42.

Judge Grossman received this briefing and then conducted another hearing, where he listened to oral arguments.  Judge Grossman then granted the Debtors' motion to extend the automatic stay to the Officers, finding that "unusual circumstance warrant the extension of the automatic stay as to the contempt action Liberty Mutual commenced against the officers."  March 4, 2009 Tr. at 37.  In so ruling, Judge Grossman held that the "the identity of The Robert Plan and Officers is identical" because "the debtors agree that The Officers are entitled to indemnification" for any judgment rendered against them. Id. at 43.

Appellants contend that Judge Grossman erred in granting the Debtors' motion for a stay.  See Appellant's Br. at 13. Appellants posit that an injunction is only proper if there is an "absolute" right to indemnification, which – Appellants contend – Delaware law does not provide for.  Id. at 13-14.  Furthermore, Appellants argue that Judge Grossman improperly based his decision on Debtors' declaration that they would indemnify the Officers.  Id. at 14.  On the contrary, Appellants insist, the Officers could not

4

legally receive indemnification because they did not act in good faith when they supposedly engaged in contempt of court.

DISCUSSION

I.    Standard of Review

"On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  FED. R. BANK. P. 8013. The Bankruptcy Court's "finding[s] of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." Id.; see also In re Momentum Mfg. Co., 25 F.3d 1132, 1136 (2d Cir. 1994); In re PCH Assoc., 949 F.2d 585, 597 (2d Cir. 1992). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Factual findings must be upheld if plausible in light of the record viewed in its entirety. Robbins Int'l, Inc. v. Robbins MBW Corp. (In re Robbins Int'l, Inc.), 275 B.R. 456, 464-65 (S.D.N.Y. 2002) (internal quotations, citations omitted).  The Bankruptcy Court's legal conclusions are reviewed de novo. See In re Momentum Mfg. Co., 25 F.3d at 1136.

II.   Subject Matter Jurisdiction

Appellants argue that Judge Grossman lacked subject matter jurisdiction to enjoin the contempt proceeding under Johns-Manville

5

Corp. v. Chubb Indem. Ins. Co. (In re Johns Manville Corp.), 517 F.3d 52 (2d Cir. 2008).  The Court notes that the Supreme Court has since reversed Johns-Manville, based on its finding that the Second Circuit improperly entertained a collateral attack to subject-matter jurisdiction.  See Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2198-2205, 174 L. Ed. 2d 99 (2009).  In any event, Appellants' subject matter jurisdiction argument incorrectly conflates the merits with jurisdiction.  See, generally, Arbaugh v. Y&H Corp., 546 U.S. 500, 511, 126 S. Ct. 1235, 1242, 163 L. Ed. 2d 1097 (2006); see also In re Trusted Net Media Holdings, LLC, 550 F.3d 1035, 1043 (11th Cir. 2008) (finding that 11 U.S.C. § 303 is not jurisdictional).  28 U.S.C. § 1334 empowers the Bankruptcy Court with "comprehensive jurisdiction" to "enjoin other actions whether against the debtor or third-parties and in whatsoever court."  See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1003 (4th Cir. 1986).  Appellants believe that a stay is improper, because the Officers have not met the criteria set forth in 11 U.S.C. §§ 105 and 362.  But, if true, that only goes to the merits of Appellees' case, not the Court's jurisdiction.

That being said, even if §§ 105 and 362 are jurisdictional in nature, the Bankruptcy Court still had subject matter jurisdiction.  For, as discussed below, the Bankruptcy Court properly stayed the action against the Officers.

III. The Merits

    A.    "Adverse Economic Consequences" and "Unusual Circumstances"

The filing of a Chapter 11 bankruptcy petition automatically stays any judicial proceeding or other act against the estate's property that was or could have been commenced before the petition was filed. 11 U.S.C. § 362. By its terms, § 362 applies only to actions against debtors, debtor's property, or estate property, and does not stay proceedings against non-debtors. But in A.H. Robins Co., the Fourth Circuit held that § 362 could be extended to enjoin civil proceedings against non-debtors in "unusual circumstances." 788 F.2d at 999. Likewise, in Queenie Ltd. v. Nygard International, 321 F.3d 282, 287 (2d Cir. 2003), the Second Circuit held that "the automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." The Second Circuit then provided several "examples" of such an immediate adverse impact, including "where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party.'" Id. at 288 (citing A.H. Robins Co.). Although citing A.H. Robins Co., the Second Circuit did not comment on that decision's "unusual circumstances" standard. But, post-Queenie, at least some Second Circuit district and bankruptcy cases

have applied it.  See, e.g., In re Pitts, Bankr. Case No. 808-74860, 2009 WL 4807615, *6 (E.D.N.Y. Bankr. 2009); DeSouza v. PlusFunds Group, Inc., 05-CV-5990, 2006 WL 2168478, *2 (S.D.N.Y. 2006).

The Court finds that both the Second Circuit's and Fourth Circuit's standards are satisfied here.  The crux of the Second Circuit's standard focuses on whether a pending litigation against a non-debtor would have "an immediate adverse economic consequence to the debtor's estate."  Appellants' contempt suit against the Officers has such an impact.  If Appellants lose their contempt suit, Delaware law requires Robert Plan to indemnify the Officers for their attorneys' fees, thereby creating a claim (and hence, an "adverse economic consequence") for the estate.  8 Del. C. § 145(c).[1] Alternatively, even if Appellants win, Robert Plan's By-Laws still require it to indemnify the Officers, if they acted in good faith. See By-Laws Art. VI, Sec. 1; 8 Del. C. § 145.  And, under Delaware law, Robert Plan's board of directors is authorized to decide whether the Officers in fact acted in good faith.  8 Del. C. § 145(d). Robert Plan has preemptively done so, informing Judge Grossman that

---

[1]  The Court is aware that the plain text of the Second Circuit's holding discusses "claim[s] against the non-debtor," not claims adjudicated in the non-debtor's favor.  But the Second Circuit's focus concerned the estate's potential liability, not the non-debtor's success-on-the-merits.  Here, even if the Officers prevailed on the merits, the legal obligation to indemnify the Officers for their attorneys' fees would still burden the estate.

it would indemnify the Officers from any judgment based on their board's finding of good faith.

Given these facts, the only way that a decision in the contempt litigation would not impose "adverse economic consequences" to the Debtors' estate is if: (1) the Officers lose; and (2) Appellants prove that Robert Plan's directors did not act in good faith when they found that the Officers acted in good faith. See, generally, Levy v. Hayes Lemmerz Intern., Inc., 2006 WL 985361, *1 (Del. Ch. 2006) (board of directors must "make a good faith judgment as to whether the putative indemnitees are entitled to be indemnified"). This is a totally speculative scenario, which requires Appellants to meet a doubly high burden of showing, essentially, that there can be no good faith disagreement regarding whether the Officers acted in good faith.[2] And any such litigation would pose the significant prospect of draining the estate even more because, if Appellants lose or otherwise can't demonstrate the directors' lack of good faith, the Debtors would then be obligated to indemnify the directors for the legal fees they incurred defending their decision to indemnify the Officers. Moreover, because the

_____

[2] In this regard, the Court rejects Appellants' argument that the Officers, ipso facto, did not act in good faith because they engaged in contempt of court. Adopting this argument would require the Court to decide the underlying merits of a case not before it. Furthermore, there may be instances in which a corporation is subject to conflicting and contradictory legal demands. In such a situation, a corporate officer's failure to comply with a court order might be the "least bad" option.

Debtors have already pledged to indemnify the Officers, a claim against the Officers will, when entered, constitute a claim (and hence, an "immediate adverse economic consequence") against the estate. Queenie Ltd., 321 F.3d at 287. The fact that Appellants could sue to nullify this negative economic consequence does not eliminate the fact that it would still continue to exist for at least the duration of Appellants' suit – thereby potentially complicating the pending bankruptcy proceedings.

Consequently, Judge Grossman correctly determined that the contempt suit against the Officers would pose an "immediate adverse impact" on the Debtors' estate, and that "unusual circumstances" therefore justified enjoining it. March 4, 2009 Tr. at 40; See also e.g., Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc., 09-CV-0249, 2009 WL 2413664, *1-2 (S.D. Ala. 2009); In re Philadelphia Newspapers, LLC, 407 B.R. 606, 616 (E.D. Pa. 2009).

B.    The Officers' "Absolute" Right To Indemnification

Appellants also argue that a stay is only appropriate if the non-debtors have an "absolute" right to indemnification. Appellants Br. at 17 (citing A.H. Robins, 788 F.2d at 999). Here, Appellants contend that the Officers supposedly lack such an "absolute" right because they may, or may not, have acted in good faith. The Court disagrees. The Officers' good faith is not a speculative future event that may, or may not, happen. The Officers'

10

have already dispersed funds, supposedly in violation of the restraining notices. Thus, the Officers' good faith (or lack thereof) is something that has already happened. If the Officers did not act in good faith, they have no indemnification rights. But if the Officers acted (past tense) in good faith, then the Robert Plan's By-Laws provide them with an "absolute" right to indemnification. And, given the possibility that the Officers had such an absolute right, the Bankruptcy Court properly protected the estate by staying the contempt case.

<u>CONCLUSION</u>

For the reasons set forth herein, the Order of the Bankruptcy Court is AFFIRMED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          March  23 , 2010